1

2

3

4

5

6                    UNITED STATES DISTRICT COURT

7                FOR THE EASTERN DISTRICT OF CALIFORNIA

8

9    Raul R. Perez, et al.,                          No. 2:23-CV-00715-KJM-AC

10                        Plaintiffs,                 ORDER

11          v.

12   United States of America,

13                        Defendant.

14

15          Plaintiffs Raul and Brittany Perez and their minor children bring this wrongful death

16   action against the United States[1] under the Federal Tort Claims Act (FTCA).  The government

17   moves for summary judgment based on the statute of limitations.  Plaintiffs oppose and the

18   government has replied.  For the foregoing reasons, the court **grants** the government's motion for

19   summary judgment.

20   **I.      BACKGROUND**

21          On June 3, 2020, plaintiffs were camping at the Schoolhouse Campground at Bullards Bar

22   Reservoir when a tree fell directly on their tent.  Perez Letter, Roger A. Dreyer (RAD) Decl. Ex.

23   1, ECF No. 20-3; Babich Letter, RAD Decl. Ex. 2, ECF No. 20-4.  A.P., plaintiffs' son and

24   brother, was killed.  Perez Letter.  Shortly thereafter, plaintiff Raul Perez wrote a letter requesting

---

[1] Plaintiffs originally named the United States Department of Agriculture: Forest Service
and Does 1-50, inclusive as defendants.  However, the United States is the only proper defendant
in an action brought under the Federal Tort Claims Act.  *See Kennedy v. U.S. Postal Serv.*, 145
F.3d 1077, 1078 (9th Cir. 1998).  The government requests the court adjust the docket to reflect
this fact.  *See* Mem. at 1 n.1, ECF No. 13-1.  Plaintiffs do not object.  *See generally* Opp'n, ECF
No. 20.  Accordingly, the court **grants** the government's request.

1   the police report and other documentation regarding the incident.  *Id.*  This began plaintiffs'

2   months-long investigation.  Plaintiffs' counsel filed Freedom of Information Act requests, *see*

3   First FOIA Req., RAD Decl. Ex. 3, ECF No. 20-5; Second FOIA Req., RAD Decl. Ex. 5, ECF

4   No. 20-7, followed up when the government initially did not timely respond, *see* FOIA emails,

5   Natalie M. Dreyer (NMD) Decl. Ex. 1, ECF No. 20-17, and ensured their clients were reimbursed

6   a deposit they had made when the government did not produce the information requested within

7   the statutory timeframe for responding to the requests, *see id.*  The investigation culminated in

8   plaintiffs sending an administrative tort claim to the U.S. Department of Agriculture (USDA):

9   Forest Service dated November 29, 2021.  First Claim, RAD Decl. Ex. 6, ECF. No. 20-8.

10   Plaintiffs' counsel shared additional information with the USDA upon request, *see* USDA Letter,

11   RAD Decl. Ex. 8, ECF No. 20-10; Claims Processor Emails, NMD Decl. Ex. 2, ECF No. 20-18,

12   and ultimately submitted an amended claim dated April 18, 2022, *see* Am. Claim, RAD Decl.

13   Ex. 9, ECF No. 20-11.  Plaintiffs continued to communicate with a USDA claims processor.  *See*

14   Claims Processor Emails; Claims Processor Emails Cont., NMD Decl. Ex. 3, ECF No. 20-19.  On

15   May 27, 2022, plaintiffs received notice their claim had been transmitted to the Office of General

16   Counsel (OGC) for determination.  *See* Notice Letter, NMD Decl. Ex. 4, ECF No. 20-20.  That

17   same day plaintiffs elected to file a lawsuit, because they were concerned time was running out to

18   file their claim in federal court.  *See* RAD Decl. ¶ 13, ECF No. 20-2.  Accordingly, plaintiffs filed

19   a wrongful death action based on the FTCA—*Perez I*.  *See* Compl., Case No. 22-cv-00941

20   (*Perez I*), ECF No. 1.[2]  As explained below, the court granted the government's motion to dismiss

21   *Perez I*, and the case was closed.  *See* Prior Order (July 20, 2023), Case No. 22-cv-00941 (*Perez*

22   *I*), ECF No. 27.  Plaintiffs have appealed the dismissal of this first case.  *See* Appeal Notice, Case

23   No. 22-cv-00941 (*Perez I*), ECF No. 29.  As of the date of this order, the appeal remains pending.

24          While the complaint in *Perez I* was pending before this court, the USDA sent two letters

25   to plaintiffs' counsel.  The first letter was dated June 16, 2022 (June letter), *see* June Letter,

---

[2] The government requests the court take judicial notice of plaintiffs' complaint and the government's answer in *Perez I*.  *See* Reply at 10 n.7, ECF No. 21.  Because these documents are matters of public record not reasonably subject to dispute, the court takes judicial notice of the filings in *Perez I*.  Fed. R. Evid. 201(b).

1   Christopher S. Elmore Decl. Ex. 1, ECF No. 13-7[3], and the second letter was dated  August 25,

2   2022 (August letter), *see* August Letter, Elmore Decl. Ex. 2, ECF No. 13-8. [4]  The government

3   argues these letters constituted denial letters.  *See* Mem. at 3,[5] ECF No. 13-1.  Plaintiffs contest

4   this characterization.  *See* Opp'n at 13–15, ECF No. 20.  On February 9, 2023, the government's

5   counsel sent an email to plaintiffs' counsel noting *Perez I* had been filed before six months had

6   passed following plaintiffs' filing of their claim with the USDA.  Government Email, Phillip A.

7   Scarborough Decl. Ex. 1, ECF No. 13-10.  Plaintiffs did not respond.  *Id.*; Scarborough Decl. ¶ 3,

8   ECF No. 13-9.  On April 14, 2023, the government filed a motion to dismiss *Perez I*.  MTD, Case

9   No. 22-cv-00941 (*Perez I*), ECF No. 18.  The government argued the filing was premature and

10  consequently deprived the court of jurisdiction.  *See id.* at 1.  This court concluded the

11  government's position was correct under the applicable law, and found  plaintiffs did not wait to

12  file their complaint until they had received a denial notice or for six months to pass after they

13  submitted their claim, as required under the FTCA.  *See* Prior Order (July 19, 2023), Case

14  No. 22-cv-00941, ECF No. 27 (finding plaintiffs did not comply with exhaustion requirements

15  imposed by 28 U.S.C. § 2675(a)).

16      Shortly after the government filed the motion to dismiss in *Perez I*, plaintiffs filed this

17  action on April 17, 2023.  *See* Compl., ECF No. 1.  The government answered the complaint, *see*

18  Answer, ECF No. 11, and then filed its motion for summary judgment on the same day, arguing

19  plaintiffs filed *Perez II* beyond the applicable statute of limitations, *see* MSJ, ECF No. 13.  The

20  motion has been fully briefed,  *see generally* Opp'n; Reply, and the court heard oral arguments on

21  December 8, 2023.  *See* Hr'g Mins., ECF No. 25.  Natalie M. Dreyer and Roger A. Dreyer

22  appeared for plaintiffs Raul Perez and Brittany Perez.  *Id.*  James Wagstaffe appeared for

23  /////

---

[3] The same letter is included in Exhibit 11 to the declaration of Roger A. Dreyer, filed at ECF No. 20-13.

[4] The same letter is included in Exhibit 12 to the declaration of Roger A. Dreyer, filed at ECF No. 20-14.

[5] When citing page numbers on filings, the court uses the pagination automatically generated by the CM/ECF system.

3

1   plaintiffs N.R.P., C.A.P. and B.M.P.  *Id.*  Philip Scarborough appeared for the government.  *Id.*

2   The court took the matter under submission.  *Id.*

3   **II.      Evidentiary Objections**

4              As a preliminary matter, because a trial court can only consider admissible evidence in

5   ruling on a motion for summary judgment, the court first addresses the government's objections

6   to plaintiffs' evidence.  *Orr v. Bank of America, NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002);

7   Fed. R. Civ. P. 56(e); *see generally* Government's Obj., ECF No. 21-4.  After careful review, the

8   court notes many of the objections fall into the following two categories: (1) legal conclusion or

9   legal argument; and (2) mischaracterization of the record.  Generally, the admissibility of

10  evidence at summary judgment is governed by different rules and different motivations than at

11  trial.  At summary judgment, Rule 56 allows objections to evidence when "the material cited . . .

12  cannot be presented in a form that would be admissible in evidence."  Fed. R. Civ. P. 56(c)(2).  A

13  court can only grant summary judgment when there is no genuine dispute of material fact.  *See*

14  *Burch v. Regents of Univ. of Cal.*, 433 F. Supp. 2d 1110, 1119 (E.D. Cal. 2006).  Statements in

15  declarations drawing improper legal conclusions or making legal arguments are not facts and the

16  court does not consider them on a motion for summary judgment.  Objections on these grounds

17  thus are "duplicative of the summary judgment standard itself" and the court **OVERRULES**

18  them.  *See, e.g.*, *Carden v. Chenega Sec. & Prot. Servs., LLC*, No. 09-cv-01799, 2011 WL

19  1807384, at *3 (E.D. Cal. May 10, 2011) (finding similarly).  Second, an objection that testimony

20  mischaracterizes the record either calls for a credibility determination unsuited for summary

21  judgment or would be better directed at the underlying evidence itself.  *See, e.g.*, *Stonefire Grill,*

22  *Inc. v. FGF Brands, Inc.*, 987 F. Supp. 2d 1023, 1034 (C.D. Cal. 2013) ("[T]he Court will not

23  consider the parties' objections aimed at the characterization of or purported misstatement of the

24  evidence[.]").  The government's objections on these grounds also are **OVERRULED**.

25            Finally, the court does not rule on objections to evidence the court does not examine in

26  ruling on the motion.  *See Burch*, 433 F. Supp. 2d at 1122  (proceeding with only necessary

27  rulings on evidentiary objections).  The court **DENIES AS MOOT** the government's other

28  /////

4

1   objections.  *See, e.g.*, Government's Obj. No. 1 (objecting to statements in Roger A. Dreyer's

2   declaration for lack of foundation and lack of personal knowledge).

3   **III.   LEGAL STANDARD**

4       Summary judgment is appropriate if "there is no genuine dispute as to any material fact

5   and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A dispute is

6   "genuine" if "a reasonable jury could return a verdict for the nonmoving party." *Anderson v.*

7   *Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A fact is "material" if it "might affect the outcome

8   of the suit under the governing law." *Id.*  The parties must cite "particular parts of materials in

9   the record." Fed. R. Civ. P. 56(c)(1).  The court then views the record in the light most favorable

10   to the nonmoving party—the plaintiffs in this case—and draws reasonable inferences in that

11   party's favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986);

12   *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).

13   **IV.   ANALYSIS**

14       The government moves for summary judgment on the grounds this suit is untimely.  *See*

15   Mem. at 1.  In opposition, plaintiffs argue the operative complaint is timely and, in the alternative,

16   the government is equitably estopped from claiming untimeliness or equitable tolling applies.  *See*

17   *generally* Opp'n.  The court address the parties' arguments in turn.

18       **A.   Timeliness**

19       Plaintiffs' argument for timeliness is predicated on the assertion the letters they received

20   do not constitute "legally recognized denial" letters under the FTCA.  *See* Opp'n at 13.  Under the

21   FTCA, a plaintiff must first submit an administrative tort claim.  28 U.S.C. § 2675(a).  If

22   plaintiffs timely file an amendment to a pending claim, as plaintiffs did here, "claimant's option

23   under 28 U.S.C § 2675(a) shall not accrue until six months after the filing of an amendment."

24   28 C.F.R. § 14.2(c).  After submitting a claim, plaintiffs may not file a lawsuit until they receive a

25   final denial of their claim or until six months has elapsed from the claim's filing date.  § 2675(a).

26   If plaintiffs do not receive a denial letter within six months after filing their claim, their claim is

27   "deemed denied" and plaintiff can initiate litigation "any time thereafter." *Id.*  However, the time

28   for commencing action against the United States is subject to certain limitations.  28 U.S.C.

§ 1401(b).  Relevant here, "a tort claim against the United States will be forever barred unless . . . action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented."  *Id.*; *see e.g.*, *Lehman v. United States*, 154 F.3d 1010 (9th Cir. 1998) (noting an agency can file a denial notice after six months have passed since a claim was filed and subsequently "trigger" the six months limitation period under 28 U.S.C. § 2401(b)).

Here, plaintiffs presented their amended claim on April 18, 2022, and were thus required to wait six months—until October 18, 2022—or until the USDA denied their claim, before bringing suit in district court.  *See* Amended Claim; RAD Decl. ¶ 12, ECF No. 20-2 (acknowledging second claim "superseded the prior submission"—their original claim).  However, prior to receiving any communication from the USDA denying their claim and prior to October 18, 2022, "[p]laintiffs' counsel elected to file their [first] complaint in federal court because in their minds, it was necessary . . . to preserve their clients' rights to a trial."  RAD Decl. ¶ 13.  As plaintiffs' counsel concede, this decision was based on a mistake of law. Opp'n at 10 (noting as one basis for the concession that "the state statute of limitations would not have barred the suit.").

After plaintiffs filed their complaint in *Perez I*, the USDA sent two letters to plaintiffs' counsel, one dated June 16, 2022, and the second dated August 25, 2022.  June Letter; August Letter.  While the government claims each of these letters served as a "proper denial that complied with the FTCA," *see* Mem. at 5, plaintiffs disagree, *see* Opp'n at 13–15.  Plaintiffs do not dispute they received the letters, and the parties effectively agree the amended claim plaintiffs filed on April 18, 2022, is the governing claim.  *See* RAD Decl. ¶ 12; Reply at 3–4 n.1.  Therefore, the question before the court is whether the USDA's August letter, which is the only letter that refers to the amended claim, is a denial letter under the FTCA that triggered the six-month statutory period for bringing suit.  *See* August Letter("[t]his is regarding the administrative tort claim that your clients presented to the United States Department of Agriculture, United States Forest Service, on April 18, 2022).

/////

6

1    Plaintiffs present two arguments in support of their claim the August letter does not

2    constitute a denial.[6]  First, plaintiffs contend the letter is not a denial, because it does not

3    unequivocally deny the amended claim and it improperly refers to the filing of *Perez I* as the basis

4    for the denial.  Opp'n at 13–14.  In response, the government argues 28 U.S.C. § 2401(b) "neither

5    requires nor prohibits a statement of reasons for the denial," and instead, an agency simply "must

6    provide notice of final denial."  *See* Reply at 4 (internal citation and quotation omitted).

7    Plaintiffs' argument in this respect is unavailing.  The August letter provides the correct

8    date the amended claim was filed, states the plaintiffs' names in the subject line and addresses the

9    letter to plaintiffs' attorneys.  *See* August Letter.  Significantly, it contains the words "your claim

10   is also hereby denied by the United States Department of Agriculture." *Id.*  This express

11   language is sufficient to constitute a notice of final denial as contemplated by both § 2675(a) and

12   § 2401(b).  *See* 28 U.S.C §§ 2675(a), 2401(b); *see also Lehman*, 154 F.3d at 1012 (denying

13   plaintiffs' claim after plaintiffs filed suit).  Plaintiffs provide no authority for their argument the

14   letter does not constitute an effective denial because it incorrectly referred to the filing of *Perez I*

15   as the basis for the denial.  *See* Opp'n at 14.  Because neither § 2675(a) nor § 2401(b) requires

16   agencies to explain why administrative tort claims are denied in their denial letters, the court finds

17   the August letter sufficient as a denial.

18   Second, plaintiffs argue the August letter "did not emanate from the agency to whom the

19   claims were submitted" and plaintiffs' counsel was "reasonably confused[.]" Opp'n at 11 n.3, 15.

20   Specifically, plaintiffs argue they presented their claim to the USDA, but received the August

21   letter from the OGC.  *Id.*  The government says this argument lacks merit because the letter came

22   from USDA's OGC, *see* Reply at 3, and based on the record the court so concludes.

23   Specifically, the government declares the "USDA's Office of the General Counsel is part

24   of the USDA."  Elmore Decl. ¶ 2, ECF No. 13-6.  This is also clear from the August letter's

25   letterhead.  In the top left hand corner, next to the USDA seal, it states "United States Department

---

[6] Plaintiffs refer to both the June and August letters in opposition.  *See* Opp'n at 13–14.
However, the court focuses on only the August letter because as discussed above, the August
letter is the only letter that refers to the operative claim.

of Agriculture."  *See* August Letter.  Next come the words "Office of the General Counsel" and then one address, clearly showing the OGC is part of the USDA.  *Id.*  Additionally, plaintiffs' counsel had previously received a communication informing them that "[a]s an agency, the Forest Service does not have authority to settle tort claims and it is required to refer them to the USDA Office of the General Counsel (OGC) for determination."  *See* USDA Letter.  Later, plaintiffs' counsel received a letter from the USDA claims processor stating the tort claim had been referred and "[a]ny future communication regarding th[eir] claim w[ould] be from the Office of General Counsel."  Notice Letter.  Given this context and chronology, the court cannot find plaintiffs' counsel's confusion reasonable.  The requirement that the denial letter come from the same agency that received the claim is met.  *See* 28 U.S.C. § 2671 (defining "Federal agency" under the FTCA); 28 U.S.C. § 2401(b).

Under 28 U.S.C. § 2401(b), which governs the time during which a party may commence a tort claim against the United States, once a plaintiff receives a final denial letter from an agency to which it presented its claim, plaintiff must bring an action within six months or have that claim be forever barred.  *See Lehman*, 154 F.3d at 1014.  Therefore, because the letter sent on August 25, 2022, was a denial letter from the USDA—the agency to which the amended claim was presented—, the deadline for plaintiffs to file suit was February 25, 2023.  The instant suit was not filed until almost two months later, on April 17, 2023.  *See* Compl.  Plaintiffs' complaint is time barred.

In the alternative, plaintiffs argue the government should be "equitably estopped from claiming untimeliness" and equitable tolling applies.  *See* Opp'n at 16–17.  The court examines whether plaintiffs are entitled to equitable relief below.

**B.     Equitable Estoppel**

The Ninth Circuit holds equitable estoppel applies under the FTCA when: (1) the party to be estopped knows the facts; (2) the party to be estopped intends their conduct will be acted on or must so act that the party invoking estoppel has a right to believe it so intended; (3) the party invoking estoppel was ignorant of the true facts; and (4) the party invoking estoppel detrimentally relied on the other party's conduct.  *Lehman*, 154 F.3d at 1016 (citing *United States v. Hemmen*,

1   51 F.3d 883, 892 (9th Cir. 1995)).  In cases against the government, a heightened standard is

2   applied.  In addition to the four factors above, a party seeking to rely on estoppel must show the

3   agency engaged in "affirmative conduct going beyond mere negligence" and the application of

4   equitable estoppel will not cause "the public's interest . . . [to] suffer undue damage."  *Id.*

5          The court finds plaintiffs are unable to meet the heightened standard here.  To show the

6   government engaged in "affirmative conduct beyond mere negligence," plaintiffs must

7   demonstrate the government deliberately lied or engaged in a pattern of false promises.  *See*

8   *Mukherjee v. I.N.S.*, 793 F.2d 1006, 1009 (9th Cir. 1986) (finding no affirmative misconduct on

9   government's behalf despite vice consul's incorrect advice to petitioner).  The government did

10  not.

11         First, to the extent plaintiffs argue the email communications from the USDA claims

12  processor amounts to misleading conduct, the court remains unconvinced.  In an email exchange

13  with a USDA claims processor, plaintiffs' counsel wrote, "[it] is our intention to file a complaint

14  in this case." Claims Processor Emails Cont. at 2.  Plaintiffs' counsel goes on to ask the USDA

15  claims processor to "confirm" whether their "claim ha[d] been submitted and deemed rejected."

16  *Id.*  The claims processor responds stating, "[w]e cannot make a determination locally on claims,

17  they must be submitted to OGC for approval or denial."  *Id.*  Plaintiffs' counsel replied, stating

18  they "[a]ppreciate[d] the confirmation" and that "[they] will act in accordance with the statute and

19  wait to hear from your office."  *Id.*  The claims processor responded saying "[t]hank you very

20  much.  Your patience and understanding is appreciated in this matter." *Id.*

21         At most, this email thread reflects a misunderstanding, or something akin to ships passing

22  in the night.  Plaintiffs' counsel attempted to confirm the amended claim had been denied from

23  someone who indicated he or she did not have the authority to make this determination.  The

24  communication does not rise to the level of affirmative conduct by the government going beyond

25  mere negligence.  The Ninth Circuit has held "[p]ersons dealing with the government are charged

26  with knowing government statutes and regulations, and they assume the risk that government

27  agents may exceed their authority and provide misinformation."  *Mukherjee*, 793 F.2d at 1009

28  (internal citations and quotations omitted); *see also McNeil v. United States*, 508 U.S. 106, 113

1   (1993) (observing "risk that a lawyer will be unable to understand the [FTCA's] exhaustion

2   requirement is virtually nonexistent").  Here, the claims processor did not provide any

3   misinformation.  Rather, the claims processor informed plaintiffs' counsel that a determination

4   could not be made at that point, because the claim had to "be submitted to OGC for approval or

5   denial."  Claims Processor Emails Cont. at 2.

6        Second, plaintiffs' argument that the government's "utter silence for almost a year about

7   the supposed technical defect of an early filing[]" means equitable estoppel is warranted here, the

8   court is not persuaded.  The Ninth Circuit has specifically held "an omission to give advice is

9   insufficient conduct to support equitable estoppel against the government." *Lehman*, 154 F.3d at

10  1017 (citation omitted) (finding plaintiffs could not successfully invoke equitable estoppel and

11  their FTCA claim time barred).  Even if plaintiffs accurately characterize the government's "utter

12  silence," this does not mean the government engaged in "affirmative conduct going beyond mere

13  negligence." *See, e.g.*, *Cadwalder v. United States*, 45 F.3d 297, 299–300 (9th Cir. 1995)

14  (holding government's failure to inform plaintiffs their claim was legally insufficient did not

15  support equitable estoppel).  In any event, as discussed below, the government did reach out to

16  plaintiffs' counsel to inform them of the technical defect. *See* Government Email.

17       Plaintiffs cannot successfully invoke equitable estoppel here.

18       **C.     Equitable Tolling**

19       Plaintiffs also assert equitable tolling applies in this case. *See* Opp'n at 17.  Equitable

20  tolling can apply to the time limitations in the FTCA. *See United States v. Kwai Fun Wong*,

21  575 U.S. 402, 420 (2015).  According to the Ninth Circuit, equitable tolling allows "courts to

22  meet new situations [that] demand equitable intervention, and to accord all the relief necessary

23  to correct . . . particular injustices." *Kwai Fun Wong v. Beebe*, 732 F.3d 1030, 1052 (9th Cir.

24  2013) (citation omitted) (discussing equitable tolling in FTCA action).  For equitable tolling to

25  apply, plaintiffs bear the burden of establishing two elements: (1) they have pursued their rights

26  diligently, and (2) some extraordinary circumstances stood in their way. *Redlin v. United States*,

27  921 F.3d 1133, 1140 (9th Cir. 2019) (citation omitted).  The diligence prong focuses on "affairs

28  within the litigant's control" while the extraordinary-circumstances prong examines "matters

1   outside [the litigant's]. . .  control." *Menominee Indian Tribe of Wisconsin v. United States*,

2   577 U.S. 17 250, 257 (2016).

3        Here, even assuming plaintiffs pursued their rights diligently, the court finds there was no

4   extraordinary circumstance outside their control justifying equitable tolling.  In *Menominee*

5   *Indian Tribe of Wisconsin*, the Supreme Court held a party's mistaken belief was not outside its

6   control and thus did not constitute an extraordinary circumstance justifying equitable tolling.

7   577 U.S. at 257; *see also Beebe*, 732 F.3d 1030, 1052 (9th Cir. 2013) (internal citation omitted)

8   ("a garden variety claim of excusable neglect, such as miscalculation that leads a lawyer to miss a

9   filing deadline, does not warrant equitable tolling").  The Court did, however, leave open the

10  question of whether a reasonable mistake of law can ever be found extraordinary.  *Id.* at n.3.

11       Here, the mistake of law—plaintiffs' counsel's untimely filing of this action—was not

12  reasonable and does not constitute an extraordinary circumstance.  *See, e.g.*, *Redlin*, 921 F.3d at

13  1141 (finding equitable tolling did not apply to excuse late filing in FTCA action).  Plaintiffs

14  argue the denial letters they received were confusing and  "appeared" to say "no further steps

15  needed to be taken" because "the lawsuit [in *Perez I*] was accepted as timely."  Opp'n at 11.

16  Plaintiffs further argue the government never advised them in 2022, when *Perez I* was filed "that

17  the lawsuit that had been filed was 'premature' or that another lawsuit needed to be filed to

18  satisfy any timing or exhaustion requirements."  Opp'n at 11-12.

19       First, even if the court agreed some of the government's communications were confusing

20  —e.g., if the court decided it was reasonable for plaintiffs' counsel to mistake the August letter

21  from 2022 as conceding the *Perez I* complaint was timely—the government's subsequent

22  communications put plaintiffs on notice there was an issue with their filing they needed to

23  remedy, in time for them to remedy.  Significantly, prior to the February 25, 2023—plaintiffs'

24  deadline to file their FTCA complaint—the government sent plaintiffs' counsel an email on

25  February 9, 2023, stating "in reviewing the complaint [in *Perez I*], it appears it was filed before

26  six months had passed after your clients submitted their [administrative claim] to USDA."

27  Government Email; *see also* Reply at 7.  Plaintiffs admit they received this email, but argue the

28  government never advised them "another lawsuit needed to be filed to satisfy any timing or

1 | exhaustion requirements." Opp'n at 7 n.4. But again, "the absence of legal advice from the

2 | government's counsel does not make plaintiffs' ignorance of the limitations period excusable."

3 | *Lehman*, 154 F.3d at 1016.

4 |      While it takes no pleasure in doing so, the court finds plaintiffs' counsel's filing the

5 | second complaint after the February 25, 2023 statutory deadline, was not a reasonable mistake of

6 | law outside their control. In this case, even if the government's letters may have caused some

7 | confusion, it was for plaintiffs' lawyers to sort through the confusion and the government

8 | counsel's subsequent communications should have cured any confusion.

9 |      Plaintiffs cannot rescue their case through reliance on equitable tolling in this case.

10 | **IV.    CONCLUSION**

11 |      For the reasons stated above, the court finds the instant suit time-barred and not subject to

12 | equitable tolling. Further, plaintiffs may not rely on equitable estoppel. The government's

13 | motion for summary judgment is **GRANTED**. The Clerk of Court is directed to **close** this case.

14 |      This order resolves ECF No. 13.

15 |      IT IS SO ORDERED.

16 | DATED: October 16, 2024.

_____
SENIOR UNITED STATES DISTRICT JUDGE